UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ESTATE OF MARTHA C. HARRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **2:20-CV-0335-SLB** |
| ) | |
| **STANDARD GUARANTY** ) | |
| **INSURANCE COMPANY;** ) | |
| **CRAWFORD & COMPANY;** ) | |
| **WELLS FARGO COMPANIES,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM OPINION

This matter comes before the court on Defendants' "Motion to Enforce Settlement." (Doc. 67).[1]  After reviewing the submissions of the parties and conducting a hearing on the matter, the court finds that the parties reached and entered a settlement agreement at mediation, and that settlement agreement is due to be enforced.

Roderick R. Harris—the administrator of the Estate of Martha C. Harris, the Plaintiff in this case—filed a *pro se* complaint against Standard Guaranty Insurance (also known as Assurant), Crawford and Company, and Wells Fargo

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.  Page number citations refer to the page numbers assigned to the document by the court's CM/ECF electronic filing system.

1

Companies in state court, alleging multiple causes of action related to an insurance claim filed after a house fire at Ms. Harris's home, which resulted in her death. (Doc. 1). The Defendants removed the case to federal court and then each filed motions to dismiss. (*Id.*; doc. 2; doc. 23; doc. 25). While the motions to dismiss were pending, Judge Anna M. Manasco—who was presiding over the case—referred the case to mediation before the undersigned. (Doc. 54).

Before mediation, the court entered an order directing the Clerk of Court to draw a name from the list of attorneys willing to take cases pro bono in this district and to inquire whether the attorney was willing to take this case on a pro bono basis solely for the purposes of mediation. (Doc. 55 at 1). Mr. Mickey Jansen Voss expressed willingness to take the case and entered an appearance on August 19, 2020. Mr. Voss did an outstanding job of representing the Plaintiff during the mediation. After mediation, on October 30, 2020, the court entered an order stating that Mr. Voss was no longer representing the Plaintiff. (Doc. 68).

At mediation, the parties engaged in lengthy negotiations conducted by the undersigned. At the conclusion of the two-day mediation, the parties reached a resolution and settlement agreement. When the parties reached their resolution, the court memorialized the agreement. (Doc. 74 [sealed]). First, the Defendants set forth the terms of the settlement agreement on the record. (*Id.* at 3–6). The court then engaged Mr. Harris in the following exchange:

> THE COURT: All right. Anything else that you would like to put on the record?
>
> Mr. Harris, is there anything you would like to put on the record? Are the terms as stated your understanding of the settlement in this case?
>
> MR. HARRIS: Yes.
>
> THE COURT: And, obviously, after all of this has been accomplished and the settlement agreements have been signed and checks delivered, Mr. Harris, you will file—need to file a motion to dismiss this case and all claims with prejudice. And what that means is you can't ever bring any claims related to this matter again in any form, in any other court.
>
> And one thing I think—I'm not sure we said it—this claim encompassed—I mean this settlement encompasses any claims that might relate to the vehicles and the other equipment that was on your property that was picked up by—I forget the name of the company—Precise or—by a towing company and sold. This settlement encompasses any claims you might have for conversion or anything related to that, to those items, any other vehicles, anything.
>
> Do you understand that?
>
> MR. HARRIS: Yes, ma'am.

(Doc. 74 at 6–7). Subsequently, Mr. Harris again stated that he understood that he was releasing his claims:

> MR. MANLEY [attorney for Defendant Wells Fargo Companies]: So Mr. Voss just pointed out that Mr. Harris is not a party to the lawsuit. He's—the estate is the party, and he's brought the lawsuit on behalf of the estate as the representative of the estate. And my point

3

|               |                                                                                                                                                                                                 |
|---------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|               | was: He would need to sign the settlement agreement, both on behalf of the estate and on behalf of himself due to the removal of the equipment from the property and resolving all those claims. |
| MR. VOSS:     | And in fairness to the defendants, I wanted to bring that up and make that point abundantly clear that he understands that he is releasing his individual claims.                                |
|               | You understand that, right?                                                                                                                                                                     |
| MR. HARRIS:   | Yes.                                                                                                                                                                                            |
| MR. VOSS:     | And you are releasing—                                                                                                                                                                          |
| THE COURT:    | And Mr. Harris said yes. I'm not sure if you could hear that.                                                                                                                                   |
|               | Go ahead.                                                                                                                                                                                       |
| MR. VOSS:     | And you are releasing all of the claims that the estate has?                                                                                                                                    |
| MR. HARRIS:   | Yes.                                                                                                                                                                                            |

(Doc. 74 at 8–9).

After the parties reached their resolution at mediation and memorialized the agreement, the Defendants drafted a proposed confidential settlement agreement and release setting forth the agreement reached at mediation. (Doc. 71). At this point in time, Mr. Harris refuses to sign the proposed confidential settlement agreement and release.

In the motion to enforce settlement now before the court, the Defendants

recount the fact that the parties reached resolution at mediation, but state that Mr. Harris has refused to go forward with the resolution reached and has attempted to back out of the settlement. (Doc. 67). Therefore, the Defendants request that the court enter an order "enforcing the resolution and settlement entered at mediation and that the Court require Plaintiff to sign the Confidential Settlement Agreement and Release, which contains the agreed upon terms and dismiss the case with prejudice." (*Id.* at 3).

Mr. Harris, proceeding *pro se* after the conclusion of Mr. Voss's representation, filed a response to the motion to enforce settlement. (Doc. 73). In his response, Mr. Harris asserts that he cannot accept the terms of the settlement requiring him to waive his right to file future lawsuits against the Defendants; he says he cannot waive those rights because "there are other parties I have to sue over issues related to this case" and writes that "[t]herefore, I decline the proposal in its entirety." (*Id.* at 1–2). He also states that the Defendants failed to honor the settlement agreement reached at mediation, thus voiding the agreement, because they did not deposit money within the time allotted at mediation. Further, he states that the settlement did not compensate him for all of his damages and the Defendants did not treat him fairly. He argues that, therefore, the court should deny the Defendants' motion to enforce settlement. (Doc. 73).

This court conducted a hearing on the motion to enforce the settlement. Mr. Harris represented himself, but Mr. Voss called in to the hearing to provide information about his recollection of the mediation. At the hearing, Mr. Harris stated that the Defendants had breached the settlement agreement by not delivering the proceeds to which he was entitled within 21 days, so he thought the agreement was void. However, the court noted that his position was not supported by the record. Mr. Harris then stated that he had not understood at the mediation that he was going to be required to waive his rights to file other lawsuits; he said that he was tired on the second day of the mediation and felt like his input was not being respected. He contended that he should not be held to the agreement because it was not fair and was not in his best interests. Upon questioning from the court, however, Mr. Voss said that it was his belief that Mr. Harris had understood the terms of the settlement when it was reached at mediation. Mr. Harris argued with that contention and suggested that he and the Defendants should enter into new negotiations more favorable to him.

Having been present at the mediation and having reviewed the evidence, the court noted at the hearing that the bare bones of everything in the proposed confidential settlement agreement and release—with the exception of an indemnification provision—had been discussed on the record at mediation. The court also reminded Mr. Harris of the terms of the agreement as discussed, and

6

stated that the evidence showed that the Defendants had not breached the agreement. The court further expressed its belief—based on recollection of the mediation proceedings—that Mr. Harris clearly understood the terms of the settlement agreement reached at mediation.

This court has jurisdiction over the Defendants' motion to enforce settlement because "[a] district court retains 'jurisdiction to enforce a settlement agreement when ... a party claims a breach of the settlement agreement before the court has dismissed the action.'" *Szanto v. Bistritz*, 743 F. App'x 940, 942 (11th Cir. 2018) (alteration in original) (quoting *Kent v. Baker*, 815 F.2d 1395, 1396 (11th Cir. 1987) (vacating the district court's dismissal for lack of jurisdiction over enforcement of a settlement agreement)). "The law is clear that '[p]rinciples governing general contract law apply to interpret settlement agreements.'" *In re Managed Care*, 756 F.3d 1222, 1232 (11th Cir. 2014) (quoting *In re Chira,* 567 F.3d 1307, 1311 (11th Cir. 2009) (interpreting settlement agreement under Florida law)). The interpretation of settlement agreement contracts is generally a matter of state law. *In re Chira,* 567 F.3d at 1311. Under Alabama law, whether the parties to a settlement had a meeting of the minds "sufficient to form a contract is judged by objective factors, not the subjective state of mind of a particular party" and depends on the "objective conduct" of the parties. *Alassmar v. City of Homewood*, No. 2:10-CV-2100-TMP, 2012 WL 13026677, at *4–*5 (N.D. Ala. Mar. 12, 2012)

(citing *Allen v. Allen*, 903 So. 2d 835, 841 (Ala. Civ. App. 2004)).

Based on the undersigned's observations at the mediation, review of the record evidence, and the evidence adduced at the hearing on the Defendants' motion, the court finds that the proposed confidential settlement agreement and release in this case accurately reflects the agreement reached at mediation—albeit with a little more "verbal meat on the bones"—except for one provision of the settlement agreement involving indemnification that goes beyond Mr. Harris's apparent understanding at the mediation. Further, the court finds that—with the exception of the indemnification provision—Mr. Harris understood all of the elements of the settlement agreement, including the requirement that he waive future claims.

Mr. Harris specifically confirmed on the record that he understood the terms of the settlement "as stated." (Doc. 74 at 6). On the record the court also explained that Mr. Harris was waiving all claims related to this matter—including claims related to any vehicles or other property—and Mr. Harris stated that he understood. (*Id.* at 6–7). Finally, Mr. Harris confirmed on the record that he understood that he was releasing all of his claims and all claims on behalf of the estate. (*Id.* at 8–9). Mr. Harris's actions at the mediation, most importantly his multiple explicit acknowledgements on the record that he understood the settlement agreement reached at the mediation, constitute objective conduct

indicating a meeting of the minds between the parties sufficient to form an enforceable contract. *See* (Doc. 74 at 6–9); *Alassmar*, No. 2:10-CV-2100-TMP, 2012 WL 13026677, at *4–*5. Because the parties had a meeting of the minds at mediation and the proposed confidential settlement agreement and release—with the exception of the indemnification provision—accurately reflects the parties' agreement, the court finds that the agreement is due to be enforced.

Finally, the court finds that Mr. Harris's argument that the Defendants have breached the agreement by failing to timely provide payment lacks merit. During the memorialization of the settlement, the court stated that the Defendants should provide payment to the Plaintiff "as expeditiously as possible" and mentioned that it "usually does take between 14 and 21 days to get money"; but the court then explicitly stated that "that's just sort of the goal to try to get it done no later than 21 days from now under the agreement." (Doc. 74 at 5). So, there was no explicit deadline for time of payment and the Defendants have not breached the settlement agreement by not having provided to Mr. Harris the agreed upon proceeds of the settlement within 21 days of the conclusion of the mediation. Accordingly, the court finds that the parties reached and entered into a settlement agreement at the mediation that has not been breached and that is due to be enforced.

Therefore, the court **will GRANT** the Defendants' motion to enforce settlement, with the exception that the Defendants' must remove all but the first

sentence of Section Eight—the indemnity provision—of the proposed confidential settlement agreement and release.[2]  The court **will DISMISS WITH PREJUDICE** the case.  It is further ordered as follows:

1. If Mr. Harris decides to sign the settlement agreement, he must set up a bank account for the Estate of Martha C. Harris in compliance with the settlement agreement.

2. Should Mr. Harris decide to appeal this dismissal, the Defendants shall put the money agreed upon in the settlement agreement in escrow, pending the resolution of the appeal.

3. Wells Fargo shall record a Quit Claim Deed deeding the property at issue to the Estate of Martha C. Harris within 30 days of this Order, or at the conclusion of any appeal, whichever is longer.

4. Wells Fargo shall deliver the 1969 Ford Mustang and 1969 Ford Mark I MS to Mr. Harris at a location that Mr. Harris will provide to Wells Fargo within 14 days of this Order.  If Mr. Harris does not provide an address or does not agree to accept the vehicles, Mr. Harris will be responsible for storage charges in the interim.

5. If the case is not appealed, the court retains jurisdiction to enforce any terms of the agreement reached in mediation.

---

[2] The court has in its possession the Confidential Settlement Agreement and Release provided to Mr. Harris via Certified and U.S. Mail on December 15, 2020.

10

**DONE** and **ORDERED** this 12th day of February, 2021.

*Sharon Lovelace Blackburn*

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE